JALCO, INC., Appellant,

v.

TOOL TRADERS, INC., Appellee.

No. 16655.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

March 25, 1976.

Marvin Schulman, Houston, for appellant.

Lapin, Totz & Mayer, William A. Petersen, Jr., Houston, for appellee.

COLEMAN, Chief Justice.

Tool Traders, Inc. sued to recover on an account from Jalco, Inc. for the rental of equipment and the value of equipment rented by defendant but not returned. The trial was to the court without a jury and resulted in a judgment for the plaintiff.

Jalco contends that the trial court erroneously entered judgment for rentals which were not placed in issue by the pleadings and that Tool Traders was not entitled to recover under the bailment contract for the value of a pump and certain hose which were not returned because evidence was produced that these items were stolen.

By Contract No. 64354 Jalco leased from Tool Traders three gas water pumps, three suction water hoses, and three discharge water hoses. The contract provided that Jalco would return to Tool Traders all articles rented in as good condition as received, ordinary wear and tear excepted. On March 4, 1974, Jalco returned two water pumps and one length of suction hose to Tool Traders. The returned equipment was in a condition not acceptable to Tool Traders. Mr. Nichols, the president of Tool Traders, informed Mr. Boyles, the shop superintendent of Jalco, of the repairs which Tool Traders would require and indicated that Jalco could either repair the equipment themselves or make a cash deposit with Tool Traders sufficient to cover the cost of repairs. On the instruction of Mr. Boyles, the truck driver for Jalco returned the pumps and hose to the shop for repair. Tool Traders continued the rental charges on the two returned pumps. One pump

was returned on April 16, 1974, and the other on July 10, 1974. Rentals were terminated on the respective dates of return.

The third pump was not returned. Mr. Nichols testified that he was told on January 30, 1974, that this pump may have been lost. Tool Traders declared the pump lost on March 4, 1974, and ceased charging rental on that date. The three suction hoses and the three discharge hoses were not returned, and Tool Traders ceased charging rental on July 10, 1974. Jalco's account was charged for the value of the pump and the hoses that were not returned. The rental agreement specified a definite daily, weekly, or monthly charge, and included an agreement that Jalco would pay for repairs of all parts damaged by misuse, or for all other extraordinary damage done.

In its original petition Tool Traders alleged the execution of the leasing Contract No. 64354 and attached a copy as an exhibit. It alleged that Jalco breached the contract in that part of the equipment was never returned to Tool Traders. It alleged that the rental on said equipment leased to Jalco became due and Jalco refused to pay same. Tool Traders alleged: "Pursuant to the terms of said lease, Plaintiff has been damaged in the amount of $5,708.42 as evidenced by the statement of account and invoices attached hereto as Exhibit 'B', which defendant has failed and refused to pay after many demands, together with attorney's fees and interest as hereinafter alleged." Its prayer was for judgment in the sum of $5,708.42 plus interest, contractual attorney's fees of $556.26, possession of its equipment, costs of court, and general relief. Contract No. 64354, a delivery order referring to that contract dated April 15, 1974, noting the return of Pump No. U4742, and a delivery order referring, apparently by mistake, to Rental Contract No. 63354, dated July 10, 1974, noting the return of Water Pump No. U4829 and calling attention to the fact that three pieces of suction hose and three pieces of discharge hose had not been returned, were attached as Exhibit "A." Exhibit "B" attached to the petition, consisted of two pages of a ledger having

vertical columns for old balance, date, folio number, debits, credits, and balance. The numbers appearing under the folio heading appear to be the numbers of the various contracts for rental. The account begins on June 18, 1973, and concludes on July 10, 1974. Various contracts other than 64354 together with the appropriate debits and credits appear on these debit sheets. The final balance dated July 10, 1975, is $5,708.42. Included in Exhibit "B" is an original invoice referring to Order No. 64354, a rental ticket on the lost pump, an invoice for the value of the lost pump, an invoice for rental for the pump returned March 4, 1974, and a rental ticket for all pumps and all the hose for one month, each of which referred to Contract No. 64354.

 Prior to trial Jalco excepted to plaintiff's petition for the reason that the account attached to the original petition contained items of debit and credit not referable to Contract No. 64354. These exceptions were overruled. At the trial Jalco objected to all evidence concerning contracts, debits, or credits referable to contracts other than No. 64354. The objections were overruled, and the trial court rendered judgment in favor of Tool Traders for the balance due on the account which included charges due on various contracts other than 64354. At the trial Tool Traders offered Exhibit Nos. 1 through 19 which were received into evidence over the objection of Jalco. Only Exhibit No. 2 related to the equipment covered by the rental Contract No. 64354. The objection that the instruments were extraneous and not covered by the pleadings should have been sustained as to all the exhibits except Exhibit No. 2. This was error on the part of the trial court. As a rule in a case tried before the court without a jury a reversal will not be required by reason of such an error since it will be presumed that the trial court did not consider such improper evidence. Here, however, the court entered a judgment in excess of the maximum amount which is supported by the evidence of the charges made by Tool Traders under Contract No. 64354. Under these circumstances we consider that the error in admitting evidence of

charges referable to contracts other than 64354 was one that was calculated to cause and probably did cause the rendition of an improper judgment.

■ The fact that the ledger sheets exhibiting the full account between the parties was attached to plaintiff's petition as a part of Exhibit "B" did not authorize the introduction of evidence supporting indebtedness due from Jalco to Tool Traders other than those arising out of the Contract No. 64354 in view of the specific wording of the petition. This is a suit to recover for breach of contract and not a suit to recover other indebtedness which might be due to Tool Traders from Jalco.

■ Jalco also contends that the trial court erred in awarding damages for its failure to return one of the leased pumps. The contention is that there is evidence to prove that the pump was stolen and that Tool Traders neither alleged nor proved negligence on the part of Jalco. In *Buchanan v. Byrd*, 519 S.W.2d 841 (Tex.1975), the Supreme Court noted that where there is a bailment for mutual benefit, a rebuttable presumption of negligence arises and a prima facie case of liability is established by a bailor against a bailee upon proof that the bailed chattel was not returned.

■ The burden of proof on the whole case, including the issue of negligence, is on the bailor but where goods committed to a bailee have either been lost or been returned in a damaged condition, and the bailee's liability depends upon his negligence, the fact of negligence is presumed, placing on the bailee the duty of producing evidence of some other cause of loss or injury. *Trammell v. Whitlock*, 150 Tex. 500, 242 S.W.2d 157 (1951).

Numerous Texas cases have held that mere proof of loss by fire or theft was sufficient to rebut the presumption of negligence notwithstanding the failure to prove causation or the exercise of due care on the part of the bailee. *H. O. Dyer, Inc. v. Steele*, 489 S.W.2d 686 (Tex.Civ.App.— Houston [1st] 1973, no writ history). In *Buchanan v. Byrd*, supra, however, the Su-

preme Court noted that the rule in Texas as applied in fire and theft cases is contrary to the weight and trend of modern authorities and should be "reexamined in an appropriate case." The Court of Civil Appeals for the 14th District in Houston recently took the opportunity to reexamine this rule in *Classified Parking Systems v. Dansereau*, Tex.Civ.App., 535 S.W.2d 14, 1976, and noted its rejection of the fire and theft rule. That court stated that the bailee cannot discharge his burden of rebutting the presumption of negligence by showing only the bare fact of loss by fire or theft; the bailee must show its own lack of negligence before the presumption can be rebutted. The court further stated that where the presumption of the bailee's negligence was not destroyed by proof that the car was stolen there was no necessity for the bailor to plead negligence.

■ The testimony in this case reflects that the pumps rented to Jalco were used at a subdivision called Diamond Head. The subdivision had guard gates and patrols. Mr. Boyles, Jalco's shop supervisor, testified that he was directed to locate the pumps and was able to locate only two of them. He said that the other pump was reported stolen and it was stolen, "as far as we know." This testimony is insufficient to rebut the presumption of negligence. The testimony is that the pump could not be found. As the Supreme Court stated in *Trammell v. Whitlock*, supra, Jalco offered an "explanation which does not explain." Since Jalco failed to rebut the presumption of negligence, it was not necessary for Tool Traders to have plead negligence, or to have introduced evidence in support of such pleading, as a prerequisite to its recovery. *Classified Parking Systems v. Dansereau*, supra.

Jalco complains that the trial court erred in permitting Mr. C. A. Nichols, Jr. to testify regarding the value of used water pumps in Harris County. Jalco further argues that the record contains no evidence of market value on the date the pump and hose were "stolen." Mr. Nichols qualified as an expert by testifying that as president

of Tool Traders he was familiar with the reasonable prices in Harris County for water pumps of the type involved in the lawsuit. He stated that he purchased equipment of a same or similar nature. However, on cross-examination he admitted that he had never tried to buy or sell used pumps in Harris County; he reiterated that he had knowledge of the used pump market in Harris County.

Where a conversion by the bailee of the subject matter of the bailment is established, the bailor is entitled to recover the reasonable market value of the subject of the bailment at the time of the conversion. 7 Tex.Jur.2d, Bailment, § 63, pp. 766–767. Since the bailor will be compensated for the use of the pump by the agreed-on rental payments up to the date that he is notified of the loss of the property, his recovery of the reasonable market value of the pump as of that date will most nearly compensate him for the loss of his property.

One pump was declared lost by the parties on March 4, 1974. No rental was charged on that pump after that date. The bailor was entitled to recover the reasonable cash market value of that pump as of that date. Mr. Nichols testified that he purchased all equipment for Tool Traders and that he was familiar with the reasonable prices for pumps in Houston, Harris County, Texas, in 1974. He testified that he had an opinion as to the market value of the pump back in 1974 and that the value of the pump was $569.70. He further testified that he based this opinion on the replacement cost of the pump less depreciation. The replacement cost was determined by securing prices from various dealers as of January 30, 1974. There was no other evidence as to the reasonable cash market value of the pump. The lost pump was 23 months old. When asked if he had any knowledge of the used pump market in Harris County, Texas, Mr. Nichols testified: "I don't know what you are speaking of." He testified that he had never tried to buy and sell used pumps. He further testified: "If you are talking about the used pump market as you just mentioned, I don't know

that." We sustain the appellant's point of error that there is insufficient evidence to support the implied finding of the trial court on the issue of the value of the lost pump.

Jalco has also objected to the implied findings of the trial court allowing rentals on the equipment from and after the date on which the equipment was tendered to Jalco in a damaged condition. The Supreme Court of Texas has approved the rule stated in the Restatement of the Law of Torts, Vol. 4, Sec. 928, which provides that where a person is entitled to a judgment for harm to chattels not amounting to a total destruction in value, he can "recover only the difference in its value before and after the harm, except that if, after the harm, it appears to be economical to repair the chattel, he can elect to recover the cost of repairs, together with the value of the loss of use during the repairs, or other losses which may have resulted during such time." *Pasadena State Bank v. Isaac,* 149 Tex. 47, 228 S.W.2d 127 (1950). The evidence will support a finding that Jalco elected to repair the damaged pumps rather than pay to Tool Traders the reasonable cost of such repair. Under those circumstances Jalco was properly held liable for the rental accruing during the time the repairs were being made.

Jalco complains that the court erred in awarding attorney's fees to Tool Traders. The rental agreement forming the basis of this litigation provided: "Lessee to pay an additional 15% as collection charge in case of default in payments whereby it becomes necessary for the Lessor to place in the hands of an attorney for collection." Jalco further argues that the recovery should not be allowed for the reason that there is no testimony in the record regarding the reasonableness of the attorney's fees. Such a contention was considered by the Supreme Court of Texas in *Kuper v. Schmidt,* 161 Tex. 189, 338 S.W.2d 948 (1960), where the rule was stated in these words:

"It is now settled that as between the legal owner and holder of a promissory note and those who are obligated to pay the same, the former is prima facie entitled to recover the attorney's fees stipulated therein upon the happening of the contingency which makes the same payable. In the absence of an issue affirmatively tendered by the defendant, it is not necessary for the plaintiff to prove an agreement to pay such fee to an attorney or that the same is reasonable . . ."

Jalco failed to introduce any evidence which would support a conclusion that the contractual attorney's fee was not reasonable. The point presents no error.

This case must be reversed and remanded to the trial court. In view of this action we find it unnecessary to consider the appellant's points of error dealing with its special exceptions which the trial court denied since these matters will not likely occur on retrial.

Reversed and remanded.