**SMITH–HAMM, INC.,** Appellant,

v.

**EQUIPMENT CONNECTION,** Appellee.

**No. 14–95–00899–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

May 1, 1997.

---

Thomas W. McQuage, Galveston, for Appellant.

Mark Allen Waite, S. Loyd Neal, Houston, for appellees.

Before YATES, HUDSON and FOWLER, JJ.

## OPINION

FOWLER, Justice.

Appellant, Smith–Hamm, Inc., appeals a jury verdict in which the jury awarded appellee, Equipment Connection, damages for unpaid obligations on damaged lead and ground wire and for unpaid rental obligations on property rented by Smith–Hamm. In five points of error, Smith–Hamm asserts the trial court erred in entering judgment because the evidence is legally and factually insufficient to support the jury's findings and the trial court erred in refusing to submit to the jury the affirmative defenses of accord and satisfaction, waiver, and estoppel. We reverse and remand the case because Smith–Hamm (1) was entitled to have two of the defenses submitted to the jury and (2) preserved the error in the charge by sufficiently bringing the charge's deficiency to the court's attention.

## FACTS

In January of 1992, Equipment Connection rented to Smith–Hamm two arc welders for use in a construction job. The arc welders rented for $700.00 per month. Smith–Hamm also rented certain cable and ground wire for the welders. In May of 1992, the two arc welders were stolen from the Smith–Hamm job site. When the president of Equipment Connection, Ernie Bazen, learned the welders had been stolen, he contacted a Smith–Hamm representative and told him that Smith–Hamm would be liable for the full market value of the stolen leased property. The Smith–Hamm representative told Bazen Smith–Hamm would submit the claim to its insurance carrier within seven to ten days. Instead of submitting it then, however, Smith–Hamm waited approximately three months before submitting the claim.

Meanwhile, Equipment Connection contacted Smith–Hamm after ten days had expired and told the company it would be liable not only for the welders but for rental obligations, which would continue to accrue until Equipment Connection paid for the stolen equipment. Equipment Connection relied on the rental agreement for its claim:

> This is a contract of renting only and not of sale, the undersigned renter agrees that he has rented the item(s) herein described upon the express condition that it will at all times remain the property of the rental agreement named above; that he has examined said item, found it to be in good condition and will return it in as good condition as when he received it, ordinary wear and tear excepted; that he will return at once to the rental agent any item not functioning normally; that he will pay promptly when due all charges which accrue because of this rental, including damages to said item. In the event the renter fails to return said item at the agreed time, or fails to abide by any of the other terms of this contract, the rental agent may repossess it without notice to the renter, and the rental agent is hereby released from all claims arising therefrom. *All charges are based on the time item is in renter's possession whether in use or not.* The rental agent is not responsible for accidents or injuries caused directly or indirectly in the use of the rented item.

(emphasis added). Five months elapsed before Equipment Connection received payment for the stolen welders. Equipment Connection filed suit for the unpaid rental charges. Not long before trial, Equipment Connection amended its pleadings to add a claim for damage to the cable and ground wire, which Smith–Hamm had returned at some point after the welders were stolen.

Smith–Hamm unsuccessfully moved for summary judgment, claiming that the contract unambiguously reflected that no rental fees were owed. The trial court found ambiguity on this issue and submitted the issue to the jury. Before trial, the parties stipulated that a lease agreement existed, Equipment Connection paid $18,430.54 for the stolen welders, and five months elapsed between the time the equipment was stolen and when Smith–Hamm paid for the welders. The parties also agreed that $5,500 was a reasonable and necessary sum for attorney's fees and that $2,500 was a reasonable and necessary sum for attorney's fees in case of an appeal. At trial, the jury awarded $1,087.50 in damages for the cable and ground wire and $4,546.50 in unpaid rent, along with the stipulated amount of $5,500 in attorney's fees.

## POINTS OF ERROR

In its first and second points of error, Smith–Hamm challenges the sufficiency of the evidence to support the jury's finding that Smith–Hamm owed unpaid rentals on the leased equipment after the equipment was stolen.

■ Smith–Hamm first argues that the judgment must be set aside as a matter of law because the equipment lease is a bailment for mutual benefit, citing *Berry Equip. Co. v. Boehck & Gardner Equip. Co.,* 662 S.W.2d 661, 663 (Tex.App.—Houston [14th Dist.] 1983, no writ); *Jalco, Inc. v. Tool Traders, Inc.,* 535 S.W.2d 898, 901–902 (Tex. Civ.App.—Houston [1st Dist.] 1976, no writ). Smith–Hamm argues that when bailed goods are stolen, the bailee-lessee is liable only if negligent and even then is liable only for the reasonable market value of the subject of the bailment at the time of the conversion. *See*

*Jalco, Inc.*, 535 S.W.2d at 902 and *Hanna v. Lott,* 888 S.W.2d 132, 139 (Tex.App.—Tyler 1994, no writ). Based on this line of reasoning, Smith–Hamm argues that Equipment Connection is not entitled to any additional recovery such as the loss of the unpaid rentals regardless of when Smith–Hamm paid for the stolen property.

Contrary to Smith–Hamm's assertion, in *Naegeli Transp. v. Gulf Electroquip, Inc.*, 853 S.W.2d 737, 739 (Tex.App.—Houston [14th Dist.1993, writ denied), this Court held that lost profits were recoverable as an element of consequential damages for breach of a bailment contract. In addition, the case Smith–Hamm cites for the proposition that rentals may not be recovered did not involve the loss of an item subject to a bailment. Instead it involved the destruction of an individual's personal car in an accident and the owner's attempt to recover loss of earning capacity because of the damage to his car. *Hanna,* 888 S.W.2d at 139. There the court held the plaintiff was not entitled to recover loss of earning capacity because of the car's unavailability. *Id.* We find Smith–Hamm's authority unconvincing and irrelevant and conclude bailment law is not dispositive of whether rentals were owed.

■ We now turn to the evidence. When an appellant attacks the legal sufficiency of an adverse finding on an issue for which he did not have the burden of proof, he must demonstrate on appeal that there is no evidence to support the adverse finding. *Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983). On review, this Court will consider only the evidence and inferences that tend to support the finding, and disregard all evidence and inferences to the contrary. *Weirich v. Weirich,* 833 S.W.2d 942, 945 (Tex.1992). If there is any evidence of probative force to support the finding, the point must be overruled and the finding upheld. *Southern States Transp., Inc. v. State,* 774 S.W.2d 639, 640 (Tex.1989).

Viewed in this light the evidence shows the following occurred after the equipment was stolen in May of 1992. Bazen, President of Equipment Connection, communicated with Smith–Hamm several times to let the company know the rentals were still owed. He personally visited Smith–Hamm's offices to convey this message. He also testified that it is normal in the industry for a renter, who has not returned a rental item, to be liable for both the fair market value of the item rented and the monthly rent until the item is paid for in full. Moreover, Equipment–Connection presented some evidence showing that Smith–Hamm thought it was responsible for the rent. For example, when Smith–Hamm submitted the claim to its insurance company for the stolen equipment, it also submitted the rental charges. In addition, several days after Smith–Hamm submitted the claim, it sent another letter to its insurer correcting an error in the amount of the rental claim. Smith–Hamm never told its insurer it did not owe the rental charges.

This evidence certainly constitutes some evidence to support the jury's verdict that rents continued to accrue each month until the stolen equipment was paid for in full. We find the verdict supported by legally sufficient evidence and overrule point of error one.

■ Smith–Hamm also argues that the evidence presented by Equipment Connection is factually insufficient to establish that rents remained due after the property was stolen. When reviewing a complaint that the evidence is factually insufficient to support a jury finding, this court will consider all the evidence that supports the finding as well as that which is contrary to it. *Plas–Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 445 (Tex.1989). This court will set aside the verdict only if the evidence is so weak as to render the finding clearly wrong or manifestly unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

In addition to the evidence we cited earlier, the following evidence is relevant on this issue. Stuart Smith, the comptroller for Smith–Hamm testified that in his opinion the industry norm does not require a lessee to continue paying rent for stolen articles until the lessor is paid for the cost of the articles. He also denied that he ever saw an invoice dated May 26, 1992, reflecting that one month's rental was due on one welder, or that Bazen had called him and asked him to

come inspect the damaged cable. Lastly, he denied that he ever assured Bazen that Smith–Hamm would pay for the cable.

After reviewing all of the evidence, we do not find the jury's findings so against the great weight and preponderance of the evidence as to be manifestly unjust or erroneous, and overrule Smith–Hamm's second point of error.

■ In points of error three through five, Smith–Hamm claims that the trial court erred in failing to submit instructions to the jury on its affirmative defenses of accord and satisfaction, waiver and estoppel. Smith–Hamm argues that because the pleadings and the evidence support their submission. Rule 278 of the Texas Rules of Civil Procedure provides that the Court shall submit instructions that are raised by the evidence. TEX.R.CIV.P. 278. If there is some evidence to support the submission of an instruction, the trial court commits reversible error if it fails to submit the instruction. *Varme v. Gordon,* 881 S.W.2d 877, 881 (Tex.App.—Houston [14th Dist.] 1994, writ denied).

■ We find the following evidence relevant on this issue. During the course of the summer, after the equipment was stolen, Ernie Bazen of Equipment Connection spoke with Smith–Hamm representatives both by phone and in person to tell the company the rentals were still due and owing and that the fair market value of the equipment also was owed. Bazen confirmed this in writing in August.

On September 25, 1992, when it still had not been paid for any of the amounts owing, Equipment Connection sent a letter demanding payment of $18,430.54, the cost of the equipment only.

> As you know, the welders and related equipment had a value of $18,430.54, an amount that was invoiced to you in May of 1992. Equipment Connection believes that more than enough time has elapsed for you and/or your insurance carriers to satisfy your financial obligation to Equipment Connection for these stolen items.

* * *

> Prior to prosecuting any formal legal action that may include the filing of a lawsuit and/or the filing of liens against your projects, I wanted to give you one last opportunity to satisfy your obligation to Equipment Connection. Accordingly, I ask that you forward to my attention, payment to Equipment Connection in the amount of $18,430.54.

* * *

The letter made no mention of either the *rentals and cable or the ground wire.*

The month following its receipt of the demand letter, Smith–Hamm forwarded to Equipment Connection a check for $18,430.54, the exact amount of the demand. Smith–Hamm typed on the check stub in bold "PAYMENT IN FULL ON ACCOUNT" and underlined it. Equipment Connection deposited the check in its account immediately upon receiving it but marked out the language referencing payment in full, faxing the check stub with the marked-out language to Smith–Hamm. Equipment Connection did not send a demand letter for the rent and the ground wire and cable until almost six months after negotiating Smith–Hamm's check.

■ Accord and satisfaction occurs when parties agree to the discharge of an existing obligation in a manner other than in accordance with the terms of their original contract. *See Hycarbex, Inc. v. Anglo–Suisse, Inc.,* 927 S.W.2d 103, 108 (Tex.App.—Houston [14th Dist.] 1996, no writ). Texas courts have held that accord and satisfaction occurs when a party negotiates a check clearly made in full payment of a debt, even though the party may strike out the full-payment language. *See Pileco, Inc. v. HCI, Inc.,* 735 S.W.2d 561 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.) (holding accord and satisfaction occurred when plaintiff on a sworn account negotiated a "full-payment" check tendered by defendant after plaintiff added protest language to the instrument); *Hixson v. Cox,* 633 S.W.2d 330 (Tex.App.—Dallas 1982, writ ref'd n.r.e.) (holding accord and satisfaction occurred when provider of

services cashed a check tendered in full payment after striking the maker's restrictive endorsement and inserting a notation that the check was accepted as part payment only); *see also,* TEX.BUS. & COM.CODE ANN. § 1.207 (Supp.1997). Based on this rule of law, the evidence recited above constitutes some evidence of accord and satisfaction.

Waiver is the intentional relinquishment of a known right or intentional conduct inconsistent with claiming it. *Massachusetts Bonding & Ins. Co. v. Orkin Exterminating Co., Inc.,* 416 S.W.2d 396, 401 (Tex.1967). We also find that the evidence recited above constitutes some evidence of waiver, since the demand letter arguably made it appear that Equipment Connection wanted only to be reimbursed for the cost of the stolen equipment and not to recover for the rentals and ground wire and cable. *Massachusetts Bonding,* 416 S.W.2d at 401.

Smith–Hamm's third defensive theory, estoppel, precludes recovery by a person whose conduct causes another to give up some valid right against the first person. *Bluebonnet Savings Bank, F.S.B. v. Grayridge Apartment Homes, Inc.,* 907 S.W.2d 904, 912 (Tex.App.—Houston [1st Dist.] 1995, writ denied). We do not find any evidence to support the submission of estoppel because we find no detrimental reliance. *Id.*

Although Equipment Connection steadfastly maintains that no evidence exists to support instructions on accord and satisfaction and waiver, it also argues that even if there was some evidence, Smith–Hamm did not take the appropriate steps to preserve any error in the charge. Smith–Hamm did the following in an attempt to have the instructions submitted and preserve its error. First, it submitted a charge to the judge which included the instructions. The trial judge denied this charge in writing, noting its denial on the very page containing the proposed instructions. In addition, at the close of the charge conference, Smith–Hamm brought to the court's attention its desire to have the affirmative defenses submitted to the jury for both the ground wire and cable and the rentals.

This was a submission of the charge, so if you will, just note on it that you overruled my objection. This is on behalf of the defendant, Smith–Hamm, an objection for the failure of submitting an affirmative defense of waiver, accord and satisfaction and fraud. An objection on the submitting of issues on each affirmative defense for the ground wire and cable. And submitting an issue on affirmative defense for rental due and owing. Those are alleged by the plaintiffs.

Note my objection, your Honor.

Clearly Smith–Hamm requested the instructions it wanted and objected to their absence from the charge. According to rule 273 of the Texas Rules of Civil Procedure "either party may present to the court and request written instructions to be given to the jury." TEX.R.CIV.P. 273. In addition, rule 278 states that "failure to submit a question shall not be deemed a ground for reversal of the judgment unless its submission, in substantially correct wording, has been requested in writing and tendered by the party complaining of the judgment . . ." TEX.R.CIV.P. 278. Smith–Hamm did what these rules require regarding a request.

In spite of this, Equipment Connection claims that in addition to submitting a correctly worded request, when Smith–Hamm objected to the charge it also had to tell the trial judge the specific reasons the instructions should be submitted to the jury. Appellee cites us to *Wright Way Const. Co. v. Harlingen Mall Co.,* 799 S.W.2d 415, 418 (Tex.App.—Corpus Christi 1990, writ denied), and rule 274 of the Texas Rules of Civil Procedure for this proposition. *Wright Way* held that an objection similar to the one made here was insufficient to preserve error. *Wright Way,* 799 S.W.2d at 418. In addition, rule 274 also appears to require a more distinct objection. "A party objecting to a charge must point out distinctly the objectionable matter and the grounds of his objection." TEX.R.CIV.P. 274. Even though we agree with Equipment Connection that *Wright Way* requires a more specific objection than Smith–Hamm gave and a narrow reading of rule 274 *may* require more, we are of the opinion that opinions of the Su-

preme Court provide more guidance on the issue addressed in *Wright Way* and on how to interpret rule 274.

In 1992, lamenting the confused state of the law on preservation of charge error, the Supreme Court acknowledged the confusion over when a request would suffice to preserve error and when an objection was needed.

> There should be but one test for determining if a party has preserved error in the jury charge, and that is whether the party made the trial court aware of the complaint, timely and plainly, and obtained a ruling.

*State Department of Highways v. Payne,* 838 S.W.2d 235, 241 (Tex.1992). Later, the issue came up again in *Alaniz v. Jones & Neuse, Inc.,* 907 S.W.2d 450, 451 (Tex.1995). There, like Smith–Hamm, the plaintiff submitted a complete requested charge which included lost profits as an element of damages. The court submitted a charge without lost profits. Like Smith–Hamm, the plaintiff objected to the omission of lost profits. The court of appeals held that the plaintiff failed to preserve error because he included his request in a complete charge, submitted his request before trial and not after the charge was given to the parties, and did not make his request separate and apart from his objections. *Payne,* 838 S.W.2d at 245. The Supreme Court disagreed, noting that rule 273 does not prohibit putting the request in a charge as long as it is not obscured. *Alaniz,* 907 S.W.2d at 451. The court also noted that the objection and request were "plainly separate," as were the request and objection in this case. *Id.* Finally, the court reiterated its comments from *Payne* that a party has preserved error in the jury charge when he has made the trial court reasonably aware of his complaint. *Id.* Moreover, according to *Alaniz, Payne* mandates that the rules on preservation of charge error "be applied in a common sense manner to serve the purposes of the rules, rather than in a technical manner which defeats them." *Id.* at 452.

Unquestionably, Smith–Hamm made the trial judge aware of its complaint, timely and plainly, and obtained rulings on both its requests and its objection, as the rules require.

This was not a difficult case in which a simple request would not adequately apprise the court (1) of the problem with the charge or (2) why Smith–Hamm was requesting the defensive instructions. *Compare Universal Services Co., Inc. v. Ung,* 904 S.W.2d 638, 640 (Tex.1995). Thus, based on *Payne* and *Alaniz,* we conclude that both the request and the objection preserved error.

We also conclude that the omission was reasonably calculated to cause and probably did cause rendition of an improper judgment and we therefore reverse and remand the case for a new trial. TEX.R.APP.P. 81(b)(1).